RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

BRIAN CHURCH, ISB #9391
Lead Deputy Attorney General
BENJAMIN SEVER, ISB #12120
Deputy Attorney General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
brian.church@ag.idaho.gov
ben.sever@ag.idaho.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAMON, by and through next friend, G.C.; THOMAS, by and through next friend, C.G.; CAMERON, by and through next friend, B.E; ANTHONY; and WENDY, on behalf of themselves and those similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> JULIET CHARRON, in her official capacity as Director, Idaho Department of Health and Welfare; SASHA O'CONNELL, in her official capacity as Deputy Director, Idaho Department of Health and Welfare; ROSS EDMUNDS, in his official capacity as Administrator, Division of Behavioral Health, <br><br> *Defendants*. | Case No. 1:25-cv-00676 <br><br> **DECLARATION OF SASHA O'CONNELL** |

I, Sasha O'Connell, Deputy Director, Idaho Department of Health and Welfare, hereby declare and swear as follows:

1. I am an adult citizen of the United States, am competent to testify to the matters stated herein, and make this declaration based on my own personal knowledge.

2. I am a deputy director in the Department of Health and Welfare, overseeing the Division of Medicaid. In this role I act as the state Medicaid director.

3. My background includes service as the deputy administrator in the Division of Medicaid overseeing managed care and long term services and supports. Prior to that I served as a performance evaluator for the Idaho Legislature.

4. On August 15, 2025 the department received Executive Order 2025-05, directing nearly all state agencies, including the Department of Health and Welfare, to pursue 3% general fund hold backs from their FY2026 appropriation. A 3% budget hold back from the FY2026 appropriation for Medicaid would amount to a necessary reduction of $29.8 million in general funds.

5. Even before the Governor's holdback, the Department was planning to request a $100 million supplemental appropriation from the legislature to achieve a balanced budget due to increased health care costs. It is common for state Medicaid agencies to pursue supplemental budget requests due to the size of their budgets and how early budgets are developed, but revenue was not available to support such a request this year. The department needed $130.5 million in general funds to comply with the executive order by not submitting a supplemental budget request (approximately $100 million) and spending 3% less than its original FY2026 appropriation (approximately $30 million).

6.    Due to 42 C.F.R. § 447.203(c)(1)(ii) the Department determined that a 4% rate decrease or more would risk Centers for Medicare and Medicaid Services ("CMS") disapproval due to concerns over the ability to maintain the provider network with decreased Medicaid provider payment rates. Therefore, the Department submitted a budget request reflecting a 4% reduction in managed care capitation rates and rates for services being paid through traditional fee-for-service Medicaid.  The total amount of this hold back was $36.8 million in general funds.

7.    The department issued information release MA25-17 on August 22, 2025 sharing its intent to pursue 4% rate reduction for Medicaid. Rates for services paid through FFS would decrease by 4% starting September 1, 2025. Managed care capitation rates, including with Magellan Healthcare, Inc., would be reduced by 4%, which "…may be through provider rate reductions or changes to optional covered services." Due to requirements under federal rule, the department would need to work with actuaries and managed care plans to identify cuts in each contract.

8.    Magellan Healthcare, Inc. ("Magellan") is the managed care organization for the Idaho Behavioral Health Plan. Assertive Community Treatment ("ACT") is covered through the Idaho Behavioral Health Plan managed by Magellan.

9.    ACT became payable by Medicaid under the Idaho Behavioral Health Plan in July 2024.

10.    In working with Magellan to achieve the 4% contract reduction, it was determined that several services covered by the Magellan contract needed to be held harmless, increasing needs in other service areas to obtain the 4% reduction. The Department and Magellan determined that steeper rate reductions would risk approval by CMS and

access to care with providers leaving the network. For example, if Magellan reduced rates for adult peer supports and ACT by 4%, instead of eliminating adult peer supports and unbundling ACT, rates for all other providers experiencing reductions in the Magellan contract would need to nearly triple from 4% to 11%. As a result, service eliminations were necessary to effectuate the 4% capitation reduction before the end of the fiscal year.

11.    Magellan had already received communications from the state's private behavioral health hospitals indicating that they would pull out of the network absent a rate increase, leaving a sincere concern these essential hospitals would stop accepting Medicaid participants if Magellan decreased their rates.

12.    The Department had already required the divisions overseeing state-run facilities to submit budgets with the Governor's required hold backs. If Medicaid payment is not available for participants who qualify, state-run facilities must rely on general funds to meet the state's need to care for patients in these settings. Cutting Medicaid rates with the Department's roughly 70% federal match effectively increases the need for general funds, adding to overall budget pressures. Also, state-run facilities would be harmed more than other state entities since they already suffered a 3% hold back. Thus, state-run facilities, such as State Hospital West, State Hospital South and State Hospital North, were held harmless. These state-run facilities provide treatment for Idahoans suffering psychiatric crises.

13.    In order to continue to provide required residential treatment facilities for youth with serious emotional disturbances, complex medical needs, and developmental disabilities diagnoses, youth psychiatric residential treatment facilities, youth residential treatment

centers, youth crisis centers, youth peer support services, and family support partner services were held harmless. The Department has a class action settlement agreement and court order concerning these services.

14. If the Department does not pursue the current plan to effectuate rate reductions, the Department must consider eliminating more optional Medicaid covered services.

15. The Department has a limited set of services that it can eliminate under current law. Federal law dictates mandatory and optional benefits. The Department is unable to remove any mandatory benefits without risking the federal matching funds for the entire program. Idaho Code further requires that the Medicaid program cover numerous benefits. Assertive Community Treatment (ACT) is not a mandatory Medicaid benefit under either state or federal law. *See* https://www.medicaid.gov/medicaid/benefits/mandatory-optional-medicaid-benefits and Idaho Code § 56-255(5)(a)(ix).

16. While ACT as a service containing a bundle of individual services is no longer available, many of the individual services within that bundle such as medication management, crisis intervention, and psychotherapy are still covered and available.

17. Idaho Medicaid has a restricted set of options to obtain required budget holdbacks. The state is already struggling to achieve the required hold backs in the Magellan contract with the announced changes as more information comes in about increasing costs that must be accounted for in the capitation rates. We face several barriers to achieving the required hold backs outside of the Magellan contract as well. If the Department is required to maintain ACT services as they existed prior to December 1, 2025, and achieve the mandated budget holdbacks, the Department will be forced to pursue the

other options discussed above, including  more cuts for state run psychiatric hospitals; cuts to payment rates for private behavioral health hospitals, which would risk those private hospital pulling out of participation in the Medicaid program; eliminating youth and adult mental health crisis centers and mobile crisis units; and cuts to other optional services. These changes may not be avoidable even with unbundling ACT. This will inevitably harm other Idahoans who receive Medicaid, including other with mental health disabilities.

Under 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the forgoing statements are true and correct to the best of my knowledge and belief.

DATED: December 9, 2025

/s/ *Sasha O'Connell*_____
SASHA O'CONNELL

CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on December 9, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Donald Z. Gray
GIVENS PURSLEY LLP
dongray@givenspursley.com

Megann Elizabeth Meier
GIVENS PURSLEY LLP
mem@givenspursley.com

Preston N. Carter
GIVENS PURSLEY LLP
prestoncarter@givenspursley.com

Jeffrey S. Beelaert
GIVENS PURSLEY LLP
jbeelaert@givenspursley.com

*Attorneys for Plaintiffs*

/s/ *James E. M. Craig*
ATTORNEY